FILED

12 SEP -6 PM 2:44

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. _____ 12 MJ 3306 |
| Plaintiff, | ) | C O M P L A I N T |
| v. | ) | Title 18, U.S.C., Sec. 1343 – Wire Fraud; Title 18, U.S.C., Sec. 1071 – Concealing Person From Arrest |
| THOMAS PAUL SILVA, | ) | |
| Defendant. | ) | |

UNSEALED  9/17/12
KCM

The undersigned Complainant, being duly sworn, states:

## Count 1

On or about April 19, 2012, within the Southern District of California, defendant THOMAS PAUL SILVA, did knowingly conceal Julio Cesar Landaverde-Valdez, for whose arrest a warrant had been issued under the law of the United States, so as to prevent his discovery and arrest, after knowing that a warrant had been issued for the apprehension of Julio Cesar Landaverde-Valdez, and which warrant had been issued on a felony charge, in violation of Title 18, United States Code, Section 1071.

## Count 2

On or about October 3, 2011, within the Southern District of California, and elsewhere, defendant THOMAS PAUL SILVA, for the purpose of executing a scheme to defraud as to material matters and to obtain money by false and fraudulent pretenses, representations, and promises from Farmers Insurance, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, the writings, signs, signals, pictures, and sounds, to wit: a telephone call from San Diego County, California to Farmers Insurance in Grand Rapids, Michigan, to report a false claim for the loss of a 2004 Nissan Titan truck (CA 8X44674) due to theft, in violation of Title 18, United States Code, Section 1343.

This complaint is based on the attached Statement of Facts incorporated herein by reference.

DATED: September _6_, 2012.

KARI HARRISON
Special Agent, FBI

Sworn and subscribed to before me
this _6_ day of September, 2012

HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

## STATEMENT OF FACTS

I, Kari Harrison, being duly sworn, hereby state:

1.     I have been a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") since June, 2006.  I am currently assigned to the San Diego Field Division, Border Corruption Task Force ("BCTF").  I have received basic law enforcement training during the FBI's Academy and other specialized training programs that I have attended since graduation.  I have conducted or participated in several public corruption investigations that involved underlying criminal activity such as drug trafficking, alien smuggling, fraud, and bribery.  Additionally, I have worked with, and consulted, numerous law enforcement officers experienced in corruption cases involving a variety of underlying criminal matters, including wire fraud, harboring fugitives, drug trafficking, and alien smuggling.

2.     This affidavit is submitted in support of a complaint and arrest warrant against THOMAS PAUL SILVA, for wire fraud, in violation of Title 18, United States Code, Section 1343 and concealment of a person from arrest, in violation of Title 18, United States Code, Section 1071.

3.     I am personally familiar with the facts and circumstances as set forth below from my own investigation and from the following sources:  oral and written reports of law enforcement officers, surveillance, interviews, subpoenaed and public records, database checks, phone analysis, searches, and other investigation.  Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation.  I set forth only those facts necessary to establish foundation for the requested complaint and arrest warrant.

1

Introduction

4.      SILVA has been a Customs and Border Protection ("CBP") Officer with the Department of Homeland Security since 2002.   SILVA has been assigned to the San Ysidro, California Port of Entry ("SYPOE") since he began with CBP.   SILVA's duties include manning the various inspection areas at the SYPOE, including primary inspection, secondary inspection, and pedestrian lanes.   Agents from the BCTF were alerted to SILVA's criminal activity in November 2010, after reports indicated that he was allowing individuals with imposter immigration documents to pass through the SYPOE.   Subsequent investigation revealed that SILVA is involved in a variety of criminal activity, some of which relates to his position as a CBP officer.

Concealment of Julio Cesar Landaverde Valdez From Arrest

5.      SILVA is married to Margarita Landaverde Silva.   Landaverde Silva is the sister of Julio Cesar Landaverde Valdez.   Agents verified these family connections through a review of San Diego County records.[1]   Family photographs and other information on the public portions of their respective Facebook accounts corroborate that they are siblings.

6.      Julio Cesar Landaverde Valdez, Landaverde Silva's brother, was convicted in 2006 for bringing in an illegal alien without presentation in United States District Court for the Southern District of California (06CR2109-JAH).   Landaverde Valdez and an associate tried to enter the United States through the SYPOE with an undocumented alien concealed in a dashboard compartment of their vehicle.   District Judge John A. Houston sentenced Landaverde Valdez to

---

1 San Diego County records indicate that Margarita Landaverde Valdez was born on 03/06/1987 to Julio Cesar Landaverde (age 33) and Daisy Margarita Valdez (age 32).   Records show also that Julio Cesar Landaverde Valdez was born on 05/07/1988 to Julio Cesae [sic] Landaverde Sanchez (age 34) and Margarita Valdez Medina (age 33). Ms. Valdez (Medina), mother of Margarita and Julio, stated her name as Daysy Margarita Valdez Medina and her date of birth as 11/12/1954 on her visa application.   While there are slight variations in the parents' names as listed on the children's birth certificates, the dates and ages indicate that Ms. Landaverde Silva and Mr. Landaverde Valdez are siblings.

eight months in custody and three years of supervised release on March 8, 2007. Based on pictures posted on Valdez's Facebook page prior to it being made private, Silva is close to his brother-in-law, Landaverde Valdez.

7.     At sentencing, Judge Houston ordered Landaverde Valdez to reside at a residential reentry center ("RRC") for 120 days following his release from custody. Landaverde Valdez subsequently violated the terms of his supervised release two times. His first violation was for his failure to complete the residential reentry program. Judge Houston revoked his supervised release, sentenced him to time served in custody, imposed supervised release for 30 months, and ordered that he reside at a RRC for up to 90 days. Judge Houston revoked Landaverde Valdez's supervised release a second time on February 22, 2011, after he repeatedly failed to report to his probation officer and file monthly reports. Judge Houston sentenced him to five months in custody and one year of supervised release, and ordered that he reside in a RRC for up to 120 days after his release. Landaverde Valdez never reported to the RRC as ordered. On June 14, 2011, then-Magistrate Judge Cathy A. Bencivengo signed a complaint that charged Landaverde Valdez with escape, in violation of 18 U.S.C. § 751, and issued a warrant for his arrest. Landaverde Valdez's whereabouts were unknown at the time the escape charges were filed against him and remain unknown today.

8.     According to an internal CBP database, on March 24, 2012, SILVA ran a computer check with the following search terms: "LANDAVERDE, JULION CESAR," and "LANDAVERDE, JULIAN CESAR." SILVA accompanied both searches with his brother-in-law's date of birth, which agents verified through a review of Landaverde Valdez's criminal history report. The internal database allows agents to see the specific information

3

accessed by SILVA on a "screen-by-screen" basis. Agents know SILVA accessed Landaverde Valdez's records because he (SILVA) had to enter a personal identification number in order to view the information. The computer records indicated to SILVA that Landaverde Valdez had an outstanding felony warrant for his arrest for "escape." The screen further instructed officers to contact the United States Marshal's Service if Landaverde Valdez was located.

9.    On April 19, 2012, SILVA was assigned to work primary inspection at the lane designated for holders of a Secure Electronic Network for Travelers Rapid Inspection ("SENTRI") pass. SENTRI lanes are designated commuter lanes for drivers and vehicles that have been pre-registered and pre-screened for more efficient crossing. An individual must apply for a SENTRI pass and register their vehicle if accepted. Only SENTRI pass holders are permitted to enter the United States through the designated SENTRI lane. CBP policy requires an officer to refer to secondary inspection any non-registered individual or vehicle attempting to enter through a SENTRI lane.

10.    At approximately 3:10 p.m., cameras at Lane 2 – the designated SENTRI lane manned by SILVA – recorded the entry of a male driver and at least two other individuals in a Volkswagen sedan, bearing California license plate number 6TEN861. The car was not registered with the SENTRI system. CBP computer systems indicated that SILVA cancelled the automatic entry of the vehicle and manually entered the license plate information for the vehicle immediately behind the Volkswagen sedan for its entrance record. CBP computers further indicated that SILVA did not enter the personal information for anyone in the car. Part of a black tattoo can be seen on the left side of the driver's neck just above the collar of his t-shirt. See Exhibit A.

4

11.    A review of the public portion of Landaverde Valdez's Facebook account revealed several photographs of him, including one that shows a black tattoo that covers part of his left shoulder, left neck area, and left upper chest.[2]  See Exhibit B.  In another Facebook photo that was posted since August 20, 2012, Landaverde Valdez's tattoo can been seen on the left side of his neck and on the lower portion of his left bicep area.  See Exhibit C.  Landaverde Valdez's tattoo matches the portion of the tattoo visible in the picture of the driver crossing the border through SILVA's SENTRI lane on April 19, 2012.  Based on these photos, as well as SILVA's prior search for his brother-in-law's information and his actions at the time the Volkswagen and its occupants entered the United States, I believe the driver of the Volkswagen was Landaverde Valdez.

Wire Fraud – Fraudulent Insurance Claim

12.    California Department of Motor Vehicles ("DMV") records show that SILVA registered a 2004 Nissan Titan truck in his own name at his residence, 1307 Haglar Way, Unit 5, Chula Vista, California, on October 13, 2009.  SILVA stated under the penalty of perjury on the registration document that he purchased the Titan as a salvaged vehicle in Mexico for $4,000.

13.    CBP electronic shift records reveal that SILVA worked at the SYPOE from 8 a.m. to 4 p.m. on September 24, 2011.  Vehicle-crossing records from that day show that, at approximately 3:10 p.m., a GMC Hummer H3, bearing California license plate number 6AAG181, registered to SILVA and his wife, Landaverde Silva, entered Mexico through the SYPOE.  At

---

2    Although it appears that Landaverde Valdez's tattoo is on the right side of his body in the photograph found in Exhibit B, it actually is on his left.  The photograph appears to be a "negative," which results in the image being reversed.  Landaverde Valdez is wearing a hat in the photograph that appears to spell "F-O-X" backwards (more precisely, the "F" appears as a backwards "F").  If viewed this way (as if "F-O-X" on his hat is spelled correctly), the tattoo that appears to be on his right side, is actually on his *left* side – the side visible in the picture of Landaverde Valdez crossing the border on April 19, 2012.

5

approximately 5:24 p.m., after SILVA's shift at the SYPOE ended, the southbound plate reader recorded SILVA's Titan, bearing California license plate number 8X44674, driving south into Mexico through the SYPOE. At approximately 11:33 p.m., photographs from the primary inspection area at the SYPOE revealed that SILVA and Landaverde Silva crossed into the United States from Mexico in the GMC Hummer H3 (CA 6AAG181).

14.    On October 2, 2011, at approximately 9:00 p.m., SILVA filed a report with the Chula Vista Police Department in which he claimed that his 2004 Nissan Titan truck had been stolen. According to the police report, SILVA stated that he parked the car on the 300-block of G Street in Chula Vista around 4:00 p.m., and when he returned a short time later, the truck was gone. SILVA told the police that no one had permission to take the vehicle.

15.    There is no record of SILVA's Nissan Titan (as determined by its license plate number) having returned to the United States since September 24, 2011. And agents have confirmed that the northbound plate-reader system was in continuous operation (e.g., no maintenance periods, no malfunctions) from September 24, 2011 through October 2, 2011.

16.    On October 3, 2011, SILVA called Farmers Insurance's office in Grand Rapids, Michigan, to initiate the insurance claim. Cell site and toll records indicate SILVA made the call from Chula Vista, California. The call was recorded by the insurance company.

17.    On October 17, 2011, SILVA faxed a "proof-of-loss" claim form to a Farmers Insurance office in Oklahoma City, Oklahoma. SILVA stated on the form that he purchased the truck on September 15, 2009 from AutoTrader for $8,500. This statement conflicts with the purchase information SILVA provided under penalty of perjury on the truck's registration documents. He further stated that he put new rims and tires on the truck after buying it. He

6

stated the truck's value at $12,975.

18.    SILVA stated that he left the truck on G Street in Chula Vista between 4:00 and

4:30 p.m.  He further described the day of the alleged theft, October 2, 2011, as follows:

> I was supposed to meet my wife at the La Bella's Pizza Place to watch a football
> game with my friends.  She told me her friends changed the location from La
> Bella's to the Hooter's downtown San Diego.  I did not want to take my vehicle all
> the way out there so I left it locked with the alarm activated on the North side of G
> St.  I went downtown in my wife's vehicle and when I returned to pick up my
> vehicle around 9:00 p.m. my vehicle was gone.  I returned to my house per [sic] a
> Chula Vista Police Officer and called to report my vehicle stolen.  My wife
> Margarita Landaverde Silva was the only witness.

19.    Primary booth photos from October 2, 2011, at the SYPOE recorded

SILVA and his wife crossing into the United States from Mexico at approximately 7:15

p.m in the Hummer H3.  This contradicts SILVA's statement to the police and the

insurance company that he was in downtown San Diego during the time the truck was

allegedly parked on the street in Chula Vista.

20.    On November 2, 2011, Farmers Insurance mailed a settlement check to

SILVA via FedEx in the amount of $7,329.37 (the total loss of the Nissan Titan) from its

Oklahoma City office to Silva's residence.  Bank records show that SILVA then deposited

the check into his Bank of America checking account ending in -2184 on November 4,

2011.

KARI HARRISON
Special Agent, FBI

Sworn and subscribed to before me
this _____6_____ day of September, 2012

HON. BARBARA L. MAJOR
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A



# EXHIBIT B



# EXHIBIT C

